**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

MICHAEL N. HANNA                                           CIVIL ACTION

VERSUS                                                              19-887-SDD-EWD

J.P. MORGAN CHASE & CO.

<u>**RULING**</u>

This matter is before the Court on the *Motion to Dismiss, Motion to Compel Arbitration*[1] by Defendant J.P. Morgan Chase & Company ("Defendant"). Plaintiff Michael Hanna ("Plaintiff") filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For the following reasons, Defendant's *Motion* is GRANTED.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff was an employee of Defendant beginning on June 17, 2016 as a Senior Home Mortgage Advisor, CPC.[4] Defendant alleges that Plaintiff electronically signed an arbitration agreement on the first day of employment;[5] Plaintiff denies having done so.[6] Plaintiff's alleged supervisor was Colin Wallace ("Wallace") throughout his employment with Defendant.[7] Beginning shortly after the start of Plaintiff's employment, Plaintiff alleges that Wallace engaged in unwelcome sexual behaviors directed at Plaintiff, including the following:

-   "making continued sexual passes at [Plaintiff], which were
    repeatedly rejected,";

---

[1] Rec. Doc. 7.
[2] Rec. Doc. 11.
[3] Rec. Doc. 17.
[4] Rec. Doc. 11 p. 1.
[5] Rec. Doc. 7-1 p. 3.
[6] Rec. Doc. 11 p. 2.
[7] Rec. Doc. 1-1 ¶2.

61123                                                                                        1

- "inviting [Plaintiff] to his home, which Wallace presented as an opportunity for the two of them to engage in sexual behavior,";
- "repeatedly inviting [Plaintiff] on dates, including for drinks and/or dinner, which [Plaintiff] rebuffed,";
- "repeatedly grabbing, fondling, pinching, and rubbing [Plaintiff's] nipples in a sexual manner,";
- "attempting to kiss [Plaintiff] on repeated occasions,"; and
- "inquiring about [Plaintiff's] sexuality while [clearly] seeking to engage in a sexual relationship with [Plaintiff]".[8]

Plaintiff alleges that he reported Wallace's harassment to Defendant to no avail and that Wallace's harassment intensified throughout 2017.[9] Wallace allegedly responded to Plaintiff's rejection of his advances by placing Plaintiff in unnecessary training programs and by forcing Plaintiff to shadow Wallace.[10] In late 2017, Plaintiff alleges that he reported Wallace's behavior again to Defendant through Vice President Stephen Smith ("Smith"), who responded by telling Plaintiff to ask Wallace to stop, or to call Human Resources.[11] According to Plaintiff, no action was taken by Smith.[12] Again, in October of 2017, Wallace allegedly grabbed Plaintiff's nipples in front of Plaintiff's co-workers; further, at a Christmas party in 2017, Wallace allegedly "began making blowjob gestures toward [Plaintiff] and then approached [Plaintiff] and grabbed his penis."[13] Plaintiff alleges that he responded to Wallace's behavior by forcibly grabbing Wallace's arm, twisting it, and yelling at Wallace to stop touching him.[14]

---

[8] Rec. Doc. 1-1 ¶3.
[9] *Id.* at ¶4-5.
[10] *Id.* at ¶6.
[11] *Id.* at ¶7.
[12] *Id.*
[13] *Id.* at ¶9.
[14] *Id.*

61123

2

Plaintiff reported the alleged harassment the day after the Christmas party in 2017 to Smith and also to Steve Cook ("Cook"), who was Wallace's and Plaintiff's supervisor.[15] Cook "advised [Plaintiff] to talk with Wallace and warned [Plaintiff] against contacting Human Resources."[16] Wallace ordered Plaintiff to meet with him after discovering that Plaintiff had reported his behavior. At the meeting, Plaintiff "told Wallace he was not gay, was not sexually interested in Wallace, and that Wallace should never touch him again."[17] When Wallace responded angrily and "started screaming" at Plaintiff, Plaintiff again reported Wallace to Cook, "to no avail."[18]

Plaintiff alleges that Wallace "began openly retaliating against [Plaintiff] by belittling him in front of his peers, singling him out for unfounded/warranted criticism, attempting to set [Plaintiff] up and falsely accusing him of misconduct, threatening disciplinary action, and micromanaging [Plaintiff]."[19] The continued sexual harassment and retaliation interfered with Plaintiff's employment by increasing the difficulty of performing his job.[20] Further sexual harassment by Wallace alleged by Plaintiff includes "making sexual passes at [Plaintiff], including by text messages suggesting sexual contact," and requesting that Plaintiff "send him 'a hot picture of you,' which [Plaintiff refused]."[21] Plaintiff alleges that Wallace changed Plaintiff's work documents and impersonated Plaintiff in employment-related matters.[22] Plaintiff's employment with Defendant was ultimately terminated after Billie Adams ("Adams")

---

[15] Rec. Doc. 1-1 at ¶10.
[16] *Id.*
[17] *Id.* at ¶11.
[18] *Id.*
[19] *Id.* at ¶12.
[20] *Id.*
[21] *Id.* at ¶13.
[22] *Id.* at ¶14.
61123

became Plaintiff's new manager in September 2018.[23] Plaintiff alleges that when a different employee failed to "lock" a loan, Wallace falsely represented to the new supervisor that the failure was Plaintiff's fault.[24] Plaintiff was terminated on November 6, 2018.[25]

Plaintiff filed suit against Defendant on November 5, 2019 in the 19th Judicial District Court for East Baton Rouge Parish, alleging claims of sexual harassment and retaliation under LA. REV. STAT. 23:301 and reprisal under LA. REV. STAT. 23:967.[26] Defendant removed the case to this Court on the basis of diversity of citizenship under 28 U.S.C. § 1332(a).[27] On January 1, 2020, Defendant filed the present *Motion to Dismiss, Motion to Compel Arbitration*, asking the Court to dismiss Plaintiff's claims and compel arbitration of the dispute.[28] The Court now turns to Defendant's *Motions*.

## II.   LAW AND ANALYSIS

### A.  Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in federal courts. Section 2 of Chapter 1 of the FAA provides that an arbitration agreement in writing "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[29] This provision requires federal courts to "place [arbitration] agreements 'upon the same footing as other contracts.'"[30] The underlying purpose of the FAA was to create

---

[23] Rec. Doc. 1-1 at ¶15.
[24] *Id.*
[25] *Id.* at ¶16.
[26] Rec. Doc. 7-1 p. 3; *see also* Rec. Doc. 1.
[27] *Id.*
[28] Rec. Doc. 7.
[29] 9 U.S.C. § 2.
[30] *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).

a policy in favor of arbitration, such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[31]

Courts undertake a two-step inquiry in evaluating motions to compel arbitration.[32] First, the parties must have an agreement to arbitrate the dispute at issue.[33] Second, if and only if the first step is satisfied, the Court "must consider whether any federal statute or policy renders the claims non-arbitrable."[34] If the dispute is referred to arbitration, the FAA requires the Court to stay or dismiss the proceedings,[35] and the Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."[36]

Because Plaintiff does not argue that his claims are non-arbitrable under a federal statute or policy, the Court need not consider the second prong of the FAA test. Consequently, the Court need only consider whether there is a valid agreement to arbitrate between the parties.

In considering the first prong of the FAA test, the Court considers (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute in question is covered by the agreement.[37] Plaintiff only presents argument

---

[31] *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 360 (5th Cir. 2013).

[32] *Ameriprise Fin. Servs. v. Etheredge*, 277 F.Appx. 447, 449 (5th Cir. 2008); *Washington Mut. Finance Group v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004); *see also Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003); *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

[33] *Etheredge*, 277 F.Appx. at 449; *Bailey*, 364 F.3d at 263; *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

[34] *Will-Drill*, 352 F.3d at 214 (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)); *Etheredge*, 277 F.Appx. at 449; *Bailey*, 364 F.3d at 263.

[35] *Holts v. TNT Cable Contractors, Inc.*, 2020 WL 1046337 at *5 (E.D. La. 2020) (citing *Tittle v. Enron Corp.*, 463 F.3d 410, 417 n.6 (5th Cir. 2006); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).

[36] 9 U.S.C. § 4. *See also Holts*, 2020 WL at *2; *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1147 n.20 (5th Cir. 1985).

[37] *Will-Drill*, 352 F.3d at 214.

on the first element regarding the validity of the Agreement; consequently, the second element regarding the scope of the Agreement is deemed unopposed by the Court. The Court's analysis of the first prong of the FAA test shall be limited only to whether there was a valid agreement to arbitrate.

Defendant contends that Plaintiff's claims are subject to a valid and binding arbitration agreement.[38] Defendant argues that, by signing a Binding Arbitration Agreement (the "Agreement"), Plaintiff agreed to arbitrate the present dispute.[39] Plaintiff argues the Agreement is not enforceable because (1) Plaintiff did not sign the Agreement, and (2) the Agreement was a contract of adhesion.[40]

> 1. *Plaintiff's Signature*

Signature is not required for acceptance under La. Civ. Code art. 1927, which states that:

> A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.[41]

However, the Agreement specifies that acceptance may be done by signature:

> When such disputes are not resolved internally, JPMorgan Chase provides for their resolution by binding arbitration as described in this Binding Arbitration Agreement ("Agreement"). By signing this Agreement you acknowledge that you waive your right to bring claims in court or to resolve them before a jury. . .

---

[38] Rec. Doc. 7-1 p. 6.
[39] *Id.* at p. 2.
[40] *See generally* Rec. Doc. 11.
[41] La. Civ. Code art. 1927.

61123

> By signing this Agreement, I acknowledge that I am waiving my right to bring claims in court or resolve them before a jury.[42]

The Agreement provides two blanks at the end of the document labeled "Signature" and "Date". Further, Plaintiff's Employment Offer was conditional upon the acceptance of the Agreement, which the Employment Offer specified could be accepted by signature:

> I understand my employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration, as set forth in the Binding Arbitration Agreement detailed below. By signing below I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of my employment with JPMorgan Chase.[43]

The Agreement and the Employment Offer, therefore, clearly indicate that acceptance of the Agreement may be done by signature.

Plaintiff argues that Defendant "cannot prove [Plaintiff] actually signed the Agreement" and "has not provided any evidence showing that [Plaintiff], himself, actually signed the Agreement."[44] Thus, Plaintiff argues, the Court should not grant the *Motion to Compel* because Defendant has not met its burden of proving the existence of a valid, enforceable agreement to arbitrate.[45] Plaintiff submits his own affidavit in support of his position, in which he testifies that he does not recall and does not believe that he signed an arbitration clause when filling out his onboarding

---

[42] Rec. Doc. 7-2 p. 3, 6.
[43] Rec. Doc. 7-2 p. 3.
[44] Rec. Doc. 11 p. 4.
[45] *Id.*
61123

documents.[46] In its *Reply*, Defendant attaches the Declarations of Karen Muscella ("Muscella") and Chayanee Ubol ("Ubol"), who each testify that the electronic signatures appearing on the Agreement are attributable to Plaintiff.[47] Plaintiff contests the Muscella Declaration in *a Motion to Strike*, arguing that Muscella's testimony contains inadmissible legal conclusions and defective expert opinions that she is not qualified to render.[48]

All of the parties' factual and legal discussion regarding whether Plaintiff did or did not electronically sign the Agreement is unavailing for the present *Motion to Compel*.[49] Applying Fifth Circuit jurisprudence to this matter, regardless of whether Plaintiff signed the Agreement, Plaintiff accepted the conditions of his employment contained in the Agreement by beginning and continuing his employment with Defendant. Indeed, continued employment is an action that is "clearly indicative of consent" as required by La. Civ. Code art. 1927.[50] Thus, because it is uncontested that Plaintiff was an employee of Defendant for over two years, the Court finds that Plaintiff accepted the Agreement through conduct that clearly indicated his consent.

---

[46] Rec. Doc. 11-1.

[47] Rec. Doc. 17 p. 3.

[48] Rec. Doc. 20-1 p. 2.

[49] Plaintiff's *Motion to Strike* the Muscella Declaration, Rec. Doc. 20, shall therefore be denied as moot, as the Court need not consider Muscella's testimony in reaching its conclusion.

[50] *Boxley v. Family Dollar Stores, Inc.*, 2020 WL 2104945 at *6 n.5 (W.D. La. 2020) ("Even if Boxley's electronic signature were insufficient to show express written acceptance, her continued employment after receipt of the Arbitration Agreement has been deemed sufficient to constitute acceptance under Louisiana law.") (citing *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532-33 (5th Cir. 2005)). *See also Banks v. Waitr Holdings, Inc.*, 2019 WL 6883672 at *5 (W.D. La. 2019) ("Banks has never denied that she received the email and attachments and she continued her employment with Waitr after receipt. Under Louisiana law, Banks' continued employment is sufficient to constitute acceptance of the Agreement to Arbitrate Claims.").

### 2. *Contract of Adhesion*

Plaintiff argues that the Agreement is unenforceable as a contract of adhesion. A contract of adhesion is a contract, usually in printed from, prepared by a party of superior bargaining power for adherence or rejection by the weaker party.[51] These contracts often raise a question as to whether the contract is unenforceable due to a lack of consent by the weaker, non-drafting party or by error.[52] In applying the standard from *Aguillard v. Auction Mgmt. Corp,* the Louisiana Supreme Court focused on four factors that can signify an adhesionary contract:

> (1) the physical characteristics of the arbitration clause, (2) the distinguished features of the arbitration clause, (3) the mutuality of the arbitration clause, in terms of the relative burdens and advantages conferred by the clause upon each party, and (4) the relative bargaining strength of the parties.[53]

Further, a party seeking to invalidate the contract as adhesionary must demonstrate that the non-drafting party either did not consent to the terms in dispute or his consent was vitiated by error, which in turn, renders the contract or provision unenforceable.[54]

The Court finds that an analysis of the *Aguillard* factors demonstrates that the Agreement is not an adhesionary contract. The first and second *Aguillard* factors, the physical characteristics and the distinguishable features of the arbitration clause, weigh strongly against adhesion. The section of the document containing the Agreement is set off by a bold, capitalized header and separate signature block[55] and the text of the Agreement is equivalently sized to the rest of the document.[56] The text

---

[51] *Aguillard v. Auction Mgmt. Corp.*, 2004-2804 (La. 7/29/2005); 908 So. 2d 1, 9.
[52] *Id.*
[53] *Dunn v. JP Morgan Chase Bank*, 2020 WL 1984328 at *11 (E.D. La. 2020).
[54] *Aguillard*, 908 So. 2d at 11.
[55] Rec. Doc. 7-2 p. 3-6, *See Dunn*, 2020 WL at *12 (finding that a Binding Arbitration Agreement header set off with bolding and underlining was sufficient to meet this factor).
[56] *See* Rec. Doc. 7-2.

of the Agreement appears to be a different font, but the chosen font does not render the document illegible or unreasonably small.[57] As for the third *Aguillard* factor, the Agreement is mutually applicable. Nowhere in the Agreement does the Defendant reserve the right to litigate any of the covered claims specified in the Agreement that the Plaintiff is bound to arbitrate.[58] Indeed, the Agreement expressly states that "[a]ny and all 'Covered Claims' . . . between me and JPMorgan Chase . . . shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement."[59] Finally, the relative bargaining strength of the parties was not unequal. If Plaintiff did not wish to sign the Agreement, then he could have negotiated for its removal or sought employment elsewhere.[60] Thus, the Court finds that the Agreement is not a contract of adhesion and is enforceable.

### B. Motion to Dismiss

Defendant moves to dismiss Plaintiff's claims pending arbitration.[61] Plaintiff does not argue against dismissal in the event that the Court compels arbitration.[62] The Court therefore deems Defendant's *Motion to Dismiss* unopposed. Moreover, the Fifth Circuit has held that dismissal may be ordered when all of the plaintiff's claims are subject to arbitration.[63] Defendant's *Motion to Dismiss* shall be GRANTED.

---

[57] *See* Rec. Doc. 7-2; *Dunn*, 2020 WL at *12.

[58] Rec. Doc. 7-2 p. 5, *See Aguillard*, 908 So. 2d at 17.

[59] Rec. Doc. 7-2 p. 4.

[60] *Velazquez v. Brand Energy & Infrastructure Servs.*, 781 F.Supp. 2d 370, 377 (W.D. La. 2011) (citing *Simpson v. Pep Boys-Manny Moe & Jack, Inc.*, 2003-0358 (La. App. 4 Cir. 4/10/03); 847 So.2d 617, 622. *See also Aguillard*, 908 So. 2d at 16-17; *Potier v. Morris Bart, L.L.C.*, 214 So. 2d 116, 123 (La. Ct. App. 4 Cir. 3/15/17).

[61] Rec. Doc. 7.

[62] *See* Rec. Doc. 11.

[63] *Griggs v. S.G.E. Mgmt. L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)) ("Some circuits have held that district courts must stay a case when all claims are submitted to arbitration, but this circuit allows district courts to dismiss such claims outright.").

### III.    CONCLUSION

For the reasons set forth above, Defendant's *Motion to Dismiss, Motion to Compel Arbitration*[64] is **GRANTED**. Plaintiff's claims against Defendant are dismissed without prejudice pending arbitration between the parties.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>August 24, 2020</u>.

<u>_Shelly D. Dick_</u>
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[64] Rec. Doc. 7.
61123